# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

ANH MY NGUYEN DUC LE,[†]

Appellant.

No. 88337-2-I

DIVISION ONE

PUBLISHED OPINION

BIRK, J. — A law enforcement officer posted an advertisement on a "well-known prostitution website" portraying himself as "a 47-year-old mom with two young children, ages 10 and 12." Anh My Nguyen Duc Le responded to the advertisement and was later convicted of attempted rape of a child in the first degree, attempted rape of a child in the second degree, and two counts of attempted commercial sexual abuse of a minor. On appeal, Le challenges (1) whether the State presented sufficient evidence that he took a substantial step in the commission of the charged attempt crimes, and (2) whether it was ineffective assistance of counsel for Le's trial counsel not to argue an entrapment defense. Finding no error, we affirm.

I

Detective Sergeant Jason Greer is a supervisor for the Washington State Patrol's missing and exploited children task force. Operating undercover, he placed the advertisement described above. Detective Sergeant Greer was

[†] Anh My Nguyen Duc Le's name is variously spelled throughout the record, so we use the name that appears on his driver license.

"essentially playing the role as if [he] was trafficking out [his] two kids and offering them up to people online who can then pay money to have sex with them." Detective Sergeant Greer posted the ad online titled "Momma Love Treat," with a picture of three individuals whose faces were obscured, text offering sexual services for money, a phone number to contact, and signed it "Cheri."

At around 3:00 a.m. on July 8, 2023, Detective Sergeant Greer received a message responding to his advertisement. The message came from a phone later linked to Le.[1] The message said, "Looking to book some time, Cheri." Later that day, Detective Sergeant Greer, acting as "Cheri," responded to Le's message, writing, "Hi, Hon. Sorry I fell asleep. We are free later today or tonight, if interested." "Cheri" and Le exchanged a series of messages, in which "Cheri" indicated that she watched "people with [her] two girls," and Le responded, in explicit language, that he wanted to have sex with "Cheri's" daughters.

"Cheri" asked Le, "[D]o you have an age limit?" And Le replied, "As long as I see joy in your eye—in your eyes, no problem." "Cheri" told Le that her daughters were 10 and 12 years old. After "Cheri" messaged Le, "Yeah, we are done. I'm not letting anyone hurt them," Le persisted and told "Cheri," "I won't hurt them." Le disclosed that he was 22 years old. "Cheri" told Le, "I'll send you a [picture] of my kids if you are really interested and are not messing around with me." Le replied,

---

[1] Le used two different phone numbers to contact law enforcement.

"Send the photos and the details. I'm interested." "Cheri" sent Le a picture of two girls sitting on a couch.[2]

After sending the picture, "Cheri" messaged Le, "How long do you want and what do you want to do?" Le replied, "I want them as long as I can have—long as I can and I want both." "Cheri" and Le messaged back and forth to arrange a meeting time, the conditions, and cost of the encounter.[3] "Cheri" and Le agreed that they would meet at 7:00 p.m., that he would pay $200 for half an hour with both girls, and that he needed to use condoms. "Cheri" and Le exchanged messages regarding a meeting location, but before they agreed on a location, Le called "Cheri," which went unanswered, and Le messaged "Cheri" to tell her that he called, "To make sure [he's] not calling a cop."

"Cheri" messaged back to apologize for missing Le's call and told him, "You can call now." When Le called again, Detective Sergeant Greer had a female undercover officer answer the call on speaker phone. Le was concerned "whether or not it was a cop or a setup." Le and the female officer agreed that Le would meet "Cheri" at a dog park near an apartment complex in Renton, Washington. Le and "Cheri" agreed to exchange photos of themselves, so "Cheri" sent a picture of the female undercover officer and Le sent a picture of himself. After the exchange

---

[2] The two "girls" depicted in the picture were undercover law enforcement officers whose appearances had been age regressed to appear younger using computer software.

[3] In one exchange, Detective Sergeant Greer messaged Le, "Oh, well, my girls are going to my sister's after tonight. So if we don't do it tonight, then it just isn't going to happen until down the road some other time." Le replied, "You sound like a cop." Detective Sergeant Greer responded, "Okay. Then find someone else. Goodbye." Le then agreed to a meeting time.

3

of photos, Le messaged that he felt much better, "[b]ut for some odd feeling, once I pulled my pants down, you're going to pull out your badge. But I trust you." "Cheri" and Le continued to exchange messages, to confirm the final location for the meet up and that Le had condoms with him.

FBI Special Agent Isabelle Ghini, operating as a member of the surveillance team for the operation, was positioned near the dog park. Special Agent Ghini, observed a male drive up, park, and exit his vehicle. He then walked directly over to the waiting female undercover officer. Le stood "conversationally close" to the undercover officer. Le then "reached towards" the undercover officer, "she leaned back," and then she gave a signal for "the arrest team to move in." Special Agent Ghini testified that the arrest signal means that the officer made a positive identification.

FBI Special Agent Owen Reese, acting as the contact team leader, led his team to make contact with Le after the undercover officer gave the signal. Special Agent Reese and his team approached Le and took him into custody. At the time of his arrest, Le had on his person two phones, two condoms, and $200 in cash.

The State charged Le with attempted rape of a child in the first degree, attempted rape of a child in the second degree, and two counts of attempted commercial sexual abuse of a minor. At trial, the jury found Le guilty of all four counts as charged. Le timely appealed.

II

On appeal, Le argues that the State did not present sufficient evidence that he took "a substantial step toward committing any crime." (Boldface omitted.)

4

Relying on State v. Grundy, 76 Wn. App. 335, 337, 866 P.2d 208 (1994), Le argues that, because he was still in the negotiation or preparation stage, "no overt act [had] taken place," and he therefore had not taken the necessary substantial step to commit the attempt crimes of which he was convicted.[4] We disagree. Le's reliance on Grundy is misplaced and the State presented sufficient evidence to support the finding that Le had taken a substantial step in the commission of the charged attempt crimes.

A

In determining the sufficiency of the evidence, we ask whether "after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Id. Sufficiency of the evidence is a question of constitutional law we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

Attempt crimes have two elements: intent to commit a specific crime and a substantial step toward the commission of the crime. RCW 9A.28.020(1). A "substantial step" is an act that is " 'strongly corroborative' " of the actor's criminal purpose. State v. Johnson, 173 Wn.2d 895, 899, 270 P.3d 591 (2012) (quoting State v. Luther, 157 Wn.2d 63, 78, 134 P.3d 205 (2006)). "Mere preparation to

---

[4] Le also contends that there was "no evidence of the age of the fictitious victim Mr. Le identified any desire toward," and that he "stated he wanted to perform sexual acts with only one of the two females pictured." Le's argument is unavailing because there was evidence that the girls were 10 and 12 years old, and that Le "want[ed] both" and agreed to pay $200 for 30 minutes with both girls.

commit a crime is not a substantial step." State v. Townsend, 147 Wn.2d 666, 679, 57 P.3d 255 (2002). When even a slight act is done in furtherance of a crime, it constitutes attempt if it shows clearly the individual's design to commit the crime. State v. Wilson, 1 Wn. App. 2d 73, 83, 404 P.3d 76 (2017). Neither factual nor legal impossibility is a defense to attempt crimes. RCW 9A.28.020(2).

A person commits rape of a child in the first degree "when the person has sexual intercourse with another who is less than twelve years old and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). A person commits rape of a child in the second degree "when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). Commercial sexual abuse of a minor has three distinct definitions, one of which is when the person "provides or agrees to provide anything of value to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him or her." RCW 9.68A.100(1)(b).

B

Washington decisions have consistently held that the evidence was sufficient to convict on attempted rape of a child charges where the defendant communicates his interest in having sex with a minor, they agree on a meeting location, and the defendant goes to the location. In Townsend, the court concluded the defendant's Internet messages to someone he thought was a 13 year old girl and his going to an arranged meeting at a motel room to have sex were sufficiently

6

corroborative of his intent to have sexual intercourse with a child. 147 Wn.2d at 670-71, 679-80. In State v. Erlandson, No. 40207-0-III, slip. op at 25-26 (Wash. Ct. App. June 16, 2026), https://www.courts.wa.gov/opinions/pdf/402070_pub.pdf, there was sufficient evidence of a substantial step towards attempted rape of a child in the second degree where the defendant communicated his interest to have sex with the victim, he was told that she was 13 years old, he took a picture of himself and sent it to her, he drove to meet her, and he arrived with two condoms. In State v. Wilson, 158 Wn. App. 305, 317-18, 242 P.3d 19 (2010), the defendant exchanged e-mails with "Jackie" and arranged to have sex with the supposed 13 year old girl. The parties agreed on a price, exchanged photographs of themselves, the defendant obtained "Jackie's" address, and he drove to the agreed upon meeting place, a parking lot near "Jackie's" apartment. Id. The defendant was arrested with $300 in his pocket, which was the amount the parties had agreed upon. Id. at 318. The evidence was sufficient that the defendant had taken a substantial step towards commission of rape of a child in the second degree. Id. In State v. Sivins, 138 Wn. App. 52, 64, 155 P.3d 982 (2007), evidence that the defendant engaged in sexual communications online with someone whom he believed to be 13 years old, he stated that he wanted to meet her to have sex with her, drove several hours, and rented a motel room in her hometown was sufficient evidence of a substantial step to support a conviction for attempted second degree rape of a child.

The evidence in this case was similar and was sufficient evidence that Le took a substantial step towards the commission of the charged crimes. Le

responded to an online ad posted by "Cheri," and communicated his desire to have sex with "Cheri's" daughters. Le told "Cheri" that age was "no problem," and he persisted even after "Cheri" disclosed her daughters' ages as 10 and 12 years old. Le messaged "Cheri," "Send the photos and the details. I'm interested." Le and "Cheri" negotiated and agreed to terms, $200 for 30 minutes with both girls, that he would have to use condoms, a meeting time, 7:00 p.m. that day, and a meeting location, a dog park near an apartment complex in Renton. Le exchanged pictures with "Cheri" to confirm that he and "Cheri" were who they said they were. Le then went to the agreed meeting place between 7:30 and 7:40 p.m., approached a female undercover officer, and was arrested. He had two phones, two condoms, and the agreed $200 in cash on his person. Here, as in the cited cases above, Le communicated his desire to have sex with minors, he negotiated and agreed to terms, including payment, meeting location, and meeting time, and he arrived at the agreed to location with condoms and the agreed payment. There was sufficient evidence that he took a substantial step towards committing the charged crimes.

Le cites Grundy, 76 Wn. App. at 336-37, to argue his actions did not amount to a substantial step. Grundy held negotiation about purchasing cocaine did not progress far enough to support a conviction for attempted possession. Id. at 337. Grundy was prosecuted under chapter 69.50 RCW, which did not define attempt but was enacted at a time when "the necessary elements of 'attempt to commit a crime' were criminal intent and an overt act." State v. Roby, 67 Wn. App. 741, 746, 840 P.2d 218 (1992). Grundy was decided under a different statutory definition for attempt. Under former RCW 9.01.070 (1909), now repealed, the elements of

8

attempt were intent and an act " 'tending but failing to accomplish' " the crime, also referred to as an overt act. State v. Gay, 4 Wn. App. 834, 838-39, 841, 486 P.2d 341 (1971); LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.92.010 (repealing former RCW 9.01.070 effective July 1976). An "overt act" meant a "direct, ineffectual act done towards commission of a crime, and, where the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt." State v. Nicholson, 77 Wn.2d 415, 420, 463 P.2d 633 (1969).

The legislature adopted the "substantial step" standard in 1975. LAWS OF 1975, 1st Ex. Sess., ch. 260, § 9A.28.020 (adopting the language currently in RCW 9A.28.020). "The standard of a substantial step will not be identical to the standard of an overt act." State v. Workman, 90 Wn.2d 443, 451, 584 P.2d 382 (1978). Instead, the definition of "substantial step" "which is the same as that employed by the Model Penal Code, normally 'will broaden the scope of attempt liability.' " State v. Jackson, 62 Wn. App. 53, 56, 813 P.2d 156 (1991) (quoting Model Penal Code § 5.01 cmt. 6(a), at 329 (1985)). Thus, in addition to being distinguishable, Grundy is not applicable to charges governed by the "substantial step" standard of RCW 9A.28.020, including the charges here of attempted rape of a child in the first degree, attempted rape of a child in the second degree, and attempted commercial sexual abuse of a minor.

III

Le argues that his trial counsel was "prejudicially ineffective for failing to raise an entrapment defense." (Boldface omitted.) We disagree. Assuming without deciding that Le was entitled to request a jury instruction on the defense of

9

entrapment, it was not ineffective assistance of counsel for Le's trial counsel not to pursue potentially inconsistent defense theories.

The right to effective assistance of counsel is guaranteed by the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). "To establish ineffective assistance of counsel the defendant must establish that his attorney's performance was deficient and the deficiency prejudiced the defendant." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Defense counsel's performance is deficient when it falls below an objective standard of reasonableness based on consideration of all the circumstances. Id. Prejudice requires the defendant to prove there is a reasonable probability that, but for the deficient performance, the outcome of the trial would have been different. Id. Failure to prove either element defeats a claim for ineffective assistance of counsel. Id.

"The threshold for the deficient performance prong is high, given the deference afforded to decisions of defense counsel in the course of representation." Grier, 171 Wn.2d at 33. "When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863, see State v. Garrett, 124 Wn.2d 504, 520, 881 P.2d 185 (1994) (We will not find ineffective assistance of counsel when the complained of actions go to counsel's theory of the case or trial tactics.). The question whether counsel's performance was ineffective is a mixed question of law and fact we review de novo. State v. Lopez, 190 Wn.2d 104, 116, 410 P.3d 1117 (2018).

10

Le contends that his trial counsel was ineffective, arguing "there was no strategic reason to *not* request the [entrapment] instruction—if the court granted the request, then [he] would have [had] two complementary theories to argue to the jury." But there was a reason not to request an entrapment instruction—it could have confused the jury and weakened Le's primary defense theory. Le's counsel argued that Le had failed to take a necessary substantial step in the commission of the charged crimes—that Le never went to the location where the sexual acts were to take place.

To support his defense theory, Le's counsel elicited testimony from Detective Sergeant Greer that the agreed plan between "Cheri" and Le was that they "would meet at that park," and "[m]ake sure [they were] both comfortable, and then walk back to" the residence where the girls purportedly resided. Le's counsel questioned Detective Maurice Washington, who testified, "I don't recall anything about the specifics of—of another location of where they were supposed to go." Le's counsel questioned Special Agent Ghini, "Was there a secondary location that the undercover was supposed to direct my client?" And Ghini replied, "I don't recall." Le's counsel elicited testimony from FBI Tactical Specialist Shirley Fung that the dog park was "merely a meet point." Le's counsel questioned Special Agent Reese, who admitted that he did not know the specific reason why Le was at the dog park, that there were no structures within the dog park where Le could have gone, and that he could not overhear the conversation Le had with the undercover officer.

11

If Le's counsel had argued in the alternative that Le was entrapped, he would have simultaneously been trying to convince the jury that Le had not taken the necessary substantial step to commit the crime and that Le had committed the crime but only by the inducement of law enforcement. See State v. Smith, 101 Wn.2d 36, 43, 677 P.2d 100 (1984) (To prevail on an entrapment defense, "[f]irst, the defendant must demonstrate that he was tricked or induced into committing the crime by acts of trickery by law enforcement agents. Second, he must demonstrate that he would not otherwise have committed the crime."). Defense counsel could reasonably conclude that arguing entrapment would weaken the theory that Le had not taken a substantial step toward the commission of the crimes. See In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 142, 385 P.3d 135 (2016) (counsel's decision to argue excusable homicide and not also request self defense instruction was reasonable). Because Le does not show deficient performance, he also does not show ineffective assistance of counsel.

Affirmed.

Birk, J.

WE CONCUR:

Coburn, J.          Mann, J.